(17 Misc. Rep. 8.)

### PEOPLE ex rel. CRAMER v. MEDBERRY, County Treasurer.

(Supreme Court, Special Term, Saratoga County. May 7, 1896.)

INTOXICATING LIQUORS—AMOUNT OF LICENSE—POPULATION OF PLACE.

Laws 1896, c. 112 (Liquor Tax Law) § 11, subd. 1, classifies cities and villages according to the population as given by the last state census, specifies the amount of the excise tax for each class, and concludes by specifying the tax to be paid "in any other place." Subdivision 4 provides that, "when the population of a city or village is not shown by the last state census, it shall be determined for the purposes of this act by the last United States census." *Held*, that a village, the population of

which was not determined by the last state or federal census, is within
the concluding clause of subdivision 1, specifying the amount of the tax "in
any other place" than the classified cities and villages.

Application by Daniel Cramer to compel Stephen C. Medberry,
county treasurer of Saratoga county, to issue to relator a liquor-tax
certificate, under Laws 1896, c. 112. Granted.

Thomas O'Connor and J. W. Houghton, for relator.
J. S. L'Amoreaux, for respondent.

McLAUGHLIN, J. The relator applied to the county treasurer
of Saratoga county for a certificate, under chapter 112 of the Laws
of 1896, permitting him to traffic in liquors to be drunk on his prem-
ises, which are situate in the village of Waterford, in said county.
At the time he made his application he tendered to and left with the
county treasurer the sum of $100, the amount of tax as claimed by
him. The county treasurer refused to issue to him the certificate
provided by the act above referred to, upon the ground that the tax
was $200, instead of $100. The sole question, therefore, to be de-
termined upon this application, is whether or not the relator is en-
titled to a certificate permitting him to traffic in liquors to be drunk
on his premises upon the payment of the sum of $100. The correct
answer to this question, of course, depends upon the construction
given to the statute. Section 11 provides that:

"Excise taxes upon the business of trafficking in liquors shall be of four
grades and assessed as follows: Subd. 1. Upon the business of trafficking
in liquors to be drunk upon the premises where sold * * * if * * * in a
city having by the last state census a population of fifteen hundred thousand
or more, the sum of eight hundred dollars; if in a city having by said census
a population of less than fifteen hundred thousand, but more than five hun-
dred thousand, the sum of six hundred and fifty dollars; if in a city having
by said census a population of less than five hundred thousand, but more
than fifty thousand, the sum of five hundred dollars; if in a city having by
said census a population of less than fifty thousand, but more than ten thou-
sand, the sum of three hundred and fifty dollars; if in a city or village hav-
ing by said census a population of less than ten thousand, but more than
five thousand, the sum of three hundred dollars; if in a village having by
said census a population of less than five thousand, but more than twelve
hundred, the sum of two hundred dollars; if in any other place, the sum of
one hundred dollars."

Subdivision 4 of same section provides:

"When the population of a city or village is not shown by the last state
census, it shall be determined for the purposes of this act by the last United
States census."

The village of Waterford was incorporated in 1794. Its popula-
tion is not shown by either the last state or federal census, and it
cannot be determined by the return made by the enumerators with-
out the aid of extrinsic evidence. The respondent, however, insists
that at the time each enumeration was taken the village then had a
population of over 1,500, and the same is clearly shown by evidence
submitted upon this application. This is undoubtedly true. In fact,
the relator does not deny it, but insists that the population must be
determined in the manner pointed out by the statute, and, for the
purposes of fixing the tax, cannot be determined in any other man-

ner, and that, inasmuch as the population is not shown by either the last state or federal census, the village of Waterford comes within the provision of the statute providing that the tax, "if in any other place, the sum of one hundred dollars." I am inclined to think that the relator's contention in this respect is correct. The act in question having provided a method for determining the population for the purpose of fixing the tax, the population must be determined in the manner provided by statute, and cannot be determined in any other way. The true construction to be given to the statute, for the purposes of fixing the tax, it seems to me, is this: All certificates of the first, second, and third classes are to be issued upon the payment of a tax, the amount of which is regulated by the population of the municipality where the business is to be conducted, as shown by the last state census; or, if the population is not shown by the last state census, then it must be determined by the last United States census. And, if it is not shown by the last state or federal census, then it comes within the provision of the statute providing that in any other place the tax shall be $100. The method provided for determining the population is a fixed and arbitrary one. The legislature had the power to select this method, and, having selected it, that method, and that method alone, must be followed. If the respondent can introduce evidence to show that the population of the village in question was, at the time the enumeration was taken, over 1,200, then the relator can introduce evidence to show that it did not in fact contain that number of inhabitants. To avoid such a contest was the very thing that the legislature intended to do, and the reason for it is quite manifest. The act not only seeks to regulate the trafficking in liquors, but it also seeks to provide a revenue for the state; and, if the population of a given locality is not shown by either the last state or federal census, then it falls within the provision of the statute, of "any other place." To hold otherwise, the words "any other place" would have to be eliminated from the statute, and that would, in effect, destroy one of the objects sought to be accomplished by the statute itself. The court can well take knowledge of the fact that, if the population of a given locality must first be determined, as a question of fact, before the amount of the tax can be fixed, the expense incurred in so doing might diminish in no small degree the amount which the state otherwise would receive. If there are localities in the state, the population of which is not shown by the last state or federal census, the legislature has the power, by future enactments, to regulate the amount of tax in such places.

Having reached this conclusion, I think the relator is entitled to a certificate, he having tendered to the county treasurer the amount of tax required, and an order can be entered to that effect; the form of the order to be agreed upon, or settled on notice.